IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| DUSTIN COLE JESSEN, | CV 24-174-BLG-DWM |
| Plaintiff, | |
| vs. | ORDER |
| C.O. SPOTTS, | |
| Defendant. | |

Defendant C.O. Spotts' motion to dismiss was converted under Fed. R. Civ. P. 12(d) to a motion for summary judgment, and a new deadline was set for filing Spotts' motion. (Doc. 18.) Spotts timely filed his motion, brief, and Statement of Undisputed Facts. (Docs. 19, 20, and 21.) After a delay, Jessen has responded. (Doc. 25.) The motion is granted.

## I. BACKGROUND

At the time of filing his Complaint, Jessen was an inmate at Pine Hills Correctional Facility, Miles City, Montana. (Doc. 1 at 2.) Jessen alleged that Defendant C.O. Spotts punched him in the stomach without provocation, knocking him to the ground and knocking the wind out of him. (Doc. 1 at 5.) Based on this allegation, Spotts' Complaint was served on Defendant Jessen.

Upon first appearing, Spotts moved to dismiss Jessen's Complaint,

1

contending that that Jessen failed to exhaust his administrative remedies, and thus, his suit is barred by the Prison Litigation Reform Act. (Doc. 11 at 3.) Jessen's response included copies of documents that differed from the copies of the same documents filed by Spotts. (Doc. 17-1.) Spotts' motion was therefore converted to a motion for summary judgment, and the parties were given additional time to file their required supporting documents. The motion for summary judgment is now fully briefed. (Docs. 19, 20, 21, 25 and 26.)

## II.  ANALYSIS

### A.  Standard for Summary Judgment

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputed facts that do not change the Court's analysis under the law may be disregarded.

2

Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Id.* at 324. In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

### B. Spotts' Motion

Spotts' motion for summary judgment contends that Plaintiff Jessen failed to exhaust his administrative remedies, and thus, his suit is barred by the Prison Litigation Reform Act. (Doc. 19 (citing 42 U.S.C. § 1997e(a).) The motion is supported by a Statement of Undisputed Facts ("S.U.F."), pursuant to D. Mont. L.R. 56.1(a), that establishes the timeline of Spotts filing his grievance, and his subsequent lawsuit. (Doc. 21.)

Jessen's response contends that he was afraid of backlash or retaliation for filing grievances. (Doc. 25 at 1 – 2.) He also asserts that Defendant's decision not to move for summary judgment on the merits shows a concession that "an assault

3

occurred."[1] (Doc. 25 at 2 – 3.) He makes no legal argument about the PLRA's requirements, other than it does not seem fair. (Doc. 25 at 3.) Jessen did not file a Statement of Disputed Facts, as required by D. Mont. 56.1(b). There are no properly disputed facts before the Court.

## C. Discussion

The Prison Litigation Reform Act ("PLRA")'s exhaustion requirement states:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 93 - 97 (2006). Exhaustion is mandatory. *Booth*, 532 U.S. at 741; *Jones v. Bock*, 549 U.S. 199, 211 (2007). "Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Albino v. Baca*, 747 F.3d

---

[1] Defendant has not conceded that an assault occurred, and the dismissal of this case on procedural grounds is no comment on what would have happened had the merits been reached. The video of the incident provided by Defendant contradicts and undermines Plaintiff's allegations and credibility.

4

1162, 1170 (9th Cir. 2014). As such, the Court will analyze the failure to exhaust defense first.

The defendant bears the burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). In this instance, Spotts has carried his burden to show that Jessen did not exhaust his available administrative remedies. Under the PLRA, prison regulations define the exhaustion requirements. *Jones*, 549 U.S. at 218. Staff conduct is a grievable issue within Montana Department of Corrections facilities. (Doc. 21 at 3.) The required process involves four steps: informal resolution, formal grievance, warden appeal, and director appeal. (Doc. 21 at 3.) Only after completing the four steps has an inmate exhausted his administrative remedies.

The undisputed record shows that Jessen filed his grievance on November 27, 2024. (Doc. 21 at 2.) It was received by the Grievance Officer on December 1, 2024, who initialed it and forwarded it to the proper personnel for review. (Doc. 21-1.) Without completing any further steps of the administrative procedure, Jessen filed his Complaint on December 5, 2024. (Defendant states the date of filing as December 10, 2024, because that is the date Jessen's Complaint was actually filed with the court. Pursuant to the federal prison mailbox rule, Jessen's Complaint is considered to have been filed on the day he put it in the prison mail

5

system. *See Orpiada v. McDaniel*, 750 F.3d 1086, 1089–90 (9th Cir. 2014). The difference in dates does not affect the analysis of Jessen's failure to exhaust.)

If, as here, the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). The prisoner must produce evidence demonstrating that "the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (internal citations and quotation marks omitted).

"The ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 578 U.S. 632, 642 (2016) (citing *Booth*, 532 U.S., at 737–738.) Therefore, inmates must exhaust those "grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth*, 532 U.S., at 738.)

There are three general situations that can render a prison or jail grievance process unavailable to an inmate. First, an administrative procedure is not available, and therefore need not be exhausted, "when (despite what regulations or

6

guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 578 U.S., at 643.

Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* "When rules are so confusing that no reasonable prisoner can use them, then they're no longer available." *Id.* (internal quotation marks and alteration omitted). However, the procedures need not be sufficiently "plain" as to preclude any reasonable mistake or debate with respect to their meaning. *Id.* Therefore, when an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion. *Id.*

Finally, administrative remedies will be deemed unavailable if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" or if administrators otherwise interfere with an inmate's pursuit of relief. *Id.,* at 644. For example, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, or if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," the remedies will be considered unavailable. *Albino*, 747

7

F.3d at 1172-73; *see also McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015) (holding that an inmate's fear of retaliation may suffice to render the grievance process unavailable, if the prisoner (1) "provide[s] a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance," and (2) "demonstrate[s] that his belief was objectively reasonable").

This third exception is the one Jessen appears to rely on, but he has not provided the information that would credibly make his case. He states twice in his response that staff advised him to file his grievance, specifically identifying C.O. Bass as advising him to do so. (Doc. 25 at 1 – 2.) Those statements do not show that he either believed prison officials would retaliate against him, nor that any such belief would be reasonable. Furthermore, he did actually file the first round of the process, suggesting that he was not afraid of retaliation. Nor does Jessen assert that he was, in fact, retaliated against. He simply stopped there and did not complete the process. Jessen has provided no facts to justify why he did not exhaust his administrative procedures. He failed to exhaust his administrative remedies, without cause. Defendant Spotts is entitled to summary judgment.

### III. CONCLUSION

Plaintiff Jessen has failed to demonstrate that there is a genuine issue of material fact that prevents summary judgment. Defendant Spotts is entitled to judgment as a matter of law.

8

Accordingly, it is HEREBY ORDERED:

1. Defendant's motion for summary judgment is **GRANTED**. (Doc. 19.) All other pending motions are **DENIED**, as moot. The Clerk of Court is directed to close this matter and enter judgment for Defendant, pursuant to Fed. R. Civ. P. 58.

2. The Clerk of Court is directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.

DATED this 24th day of September, 2025.

_____
Donald W. Molloy, District Judge
United States District Court